## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MEL M. MARIN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 2:15cv791 |
| | ) **Electronic Filing** |
| **FORD CITY**, | ) |
| **FORD CITY COUNCIL MEMBERS**, | ) |
| in their personal capacities, jointly | ) |
| and severally, | ) |
| Defendants. | ) |

## OPINION

Mel M. Marin ("plaintiff") filed a motion to proceed *in forma pauperis* on June 17, 2015,

and submitted with it a complaint seeking redress for the alleged violation of his First and

Fourteenth Amendment rights in conjunction with a shut-off of water service at a house in Ford

City.[1] The real estate is owned by a family trust and plaintiff and his sister are the beneficiaries

---

[1] Plaintiff, also known as Melvin M. Marinkovic, is a serial *pro se* filer who has filed vexatious litigation in this court in *Mel Marin v. The Erie Times, et al.*, 1:11cv102 (Doc. No. 18), *aff'd*, 525 F. App'x 74 (3d Cir. 2013); *In re: Joseph Fragile, et al.*, 2:11cv788 (Doc. No. 8); *In re: Joseph Fragile, et al.*, 2:11cv789 (Doc. No. 7), *Mel Marin v. Tom Leslie, et al.*, 2:09cv1453 (Doc. No.s 57 & 58); *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 (Doc. No. 21), *Marin v. La Paloma Healthcare Center, et al.*, 1:11cv230 (Doc. No.s 2 & 3), and *Marinkovic v. Sinnott, et al.*, 1:13cv185 (Doc. Nos. 2 & 3). He has filed an action challenging the actions of private citizens in opposing his campaign for federal congress, which the court found likely to be "more of the same." *See Marin v. Robert A. Biros, et al.,* 2:11cv884 (Doc. No. 6 at 4). Plaintiff also has pursued an action challenging the need for him to submit his social security number in order to receive a profession license as an Emergency Medical Technician, which the court found to be without merit at summary judgment. *See* Opinion of April 11, 2014 in *Mel Marin v. William McClincy and Melissa Thompson*, 1:11cv132 (Doc. No. 81 in 1:11cv132). He likewise has filed over 70 proceedings in other jurisdictions and been placed on the "Vexatious Litigant List" by the State of California in connection with a filing in the San Diego Superior Court at No. 720715. *See* Transmittal Statement of the Bankruptcy Court to Accompany Notice of Appeal (Doc. No. 1-14) in *In re: Joseph Fragile, et al.*, 2:11cv789 (W.D. Pa. June 15, 2011) at 6 n.3. Plaintiff "was once a law clerk in the federal court and a 9th Circuit extern." Verified First Amended Complaint in *Melvin M. Marinkovic v. Mayor Joseph Sinnott, et al.*, 1:12cv139 (Doc. No. 3) at ¶ 112. Plaintiff attended Harvard University and has a law degree from Oxford

under the trust. Presently before the court is plaintiff's motion to proceed *in forma pauperis*. For the reasons set forth below, the motion will be granted and the Clerk will be directed to file the complaint. Further, plaintiff's claims will be dismissed for failure to state a claim upon which relief can be granted and a final judgment in the form of dismissal will be entered.

The United States Court of Appeals for the Third Circuit has instructed the district courts to utilize a two-step analysis to determine whether to direct service of a complaint where the plaintiff seeks to proceed *in forma pauperis*. First, the court must determine whether the litigant is indigent within the meaning of 28 U.S.C. § 1915(a). Second, the court must determine whether the complaint is frivolous or malicious under 28 U.S.C. § 1915(d). *Roman v. Jeffes*,

---

University. For additional information and another account of similar escapades by plaintiff *see, e.g.,* http://triblive.com/news/armstrong/8171747-74/marin-county-lawsuit.

Plaintiff also uses different addresses in different states to maintain his pending cases. He frequently claims not to have received mail at the address he maintains in the court's docket and seeks to reset his own deadlines for compliance with any particular pretrial deadline. A review of his filings in the related dockets reflects the repeated use of such tactics. *See e.g.* Motion for Service (Doc. No. 13 in 1:12cv139); Motion for an Order to Allow Filing of Opposition to Motion to Dismiss Out-of-Time (Doc. No. 17 in 1:12cv139); Notice of and Motion for Leave to Allow Responses to Order of April 11, 2013 Out-of-Time and Request for Clerk to Send Case Management Order and Declaration in Support (Doc. No. 51 in 2:09cv1453) at 1; Notice of and Motion to Supplement Motion for Late Response to Order of April 11, 2013 Out-of-Time and Request for Clerk to Send 2011 Case Management Order (Doc. No. 55 in 2:09cv1453) at 1; Plaintiff's Notice of and Motion for Leave to File a Pre-Trail Statement Out-of-Time (Doc. No. 31 in 2:06cv690) at 1; Plaintiff's Notice of Change of Address and Motion for Remailing (Doc. No. 52 in 1:11-cv-132); Motion for Leave to File Opposition to Summary Judgment Out of Time (Doc. No. 64 in 1:11-cv-132 at 5-6); Motion for Leave to File Third Amended Complaint Out of Time (Doc. No. 65 in 1:11-cv-132 at 1); Motion to Vacate Memorandum & Order Dismissing Case (Doc. No. 10 in 2:11cv884). The docket in each case verifies that in accordance with the Local Rules all orders and opinions are mailed to plaintiff at the mailing address he has provided for the particular case (which includes a change of address upon proper notification to the Clerk).

904 F.2d 192, 194 n.1 (3d Cir. 1990). The court finds plaintiff to be without sufficient funds to pay the required filing fee. Thus, he will be granted leave to proceed in forma pauperis.

In *Neitzke v. Williams*, 490 U.S. 319 (1989), the Supreme Court identified two types of legally frivolous complaints: (1) those based upon indisputably meritless legal theory, and (2) those with factual contentions which clearly are baseless. *Id.* at 327. An example of the first is where a defendant enjoys immunity from suit, and an example of the second is a claim describing a factual scenario which is fanciful or delusional. *Id.* In addition, Congress has expanded the scope of § 1915 to require that the court be satisfied that the complaint states a claim upon which relief can be granted before it directs service; if it does not, the action shall be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff filed the instant action regarding the connection and termination of water service at a house he acquired by tax sale. Motion to Proceed *in forma pauperis* (Doc. 1) at p.2; Complaint (Doc. No. 1-1) at ¶¶ 5-16. Ownership of the house is in a family trust. Motion to Proceed *in forma pauperis* (Doc. 1) at p.2. Plaintiff and his sister are the beneficiaries of that trust. *Id.*

Plaintiff arranged to have the water turned on at the house and gave an address in Hermitage, Pennsylvania, as the billing address. Complaint at ¶ 5. The water authority workers were unable to activate service because a water leak was discovered during the connection process. *Id.* One of the workers informed another that plaintiff would not have to pay for the failed attempt. *Id.* Two months later a water service charge subsequently was generated and sent to the Hermitage address provided by plaintiff. *Id.* at ¶ 8. Plaintiff claims to have received the bill three months after the failed effort to connect service. *Id.* at ¶ 10.

3

Upon receiving the bill plaintiff contacted the water authority because he had not used any water. *Id.* at ¶¶ 8-9. Plaintiff then requested a change of address for the billing, and gave the water authority a mailing address in Ford City. *Id.* at ¶ 10.

Plaintiff had the water successfully turned on at the house on February 5, 2015. *Id.* at ¶ 11. On April 13, 2015, plaintiff received a bill which included a late charge from the previous month and a notice of intent to disconnect on a date that had already past. *Id.* at ¶ 13. Of course, the bill was sent to the Hermitage address instead of the Ford City address. *Id.* at ¶ 13. It included late fee charges. *Id.* at ¶ 13.

On April 15, 2013, plaintiff discovered a posted notice on the door of the property indicating the service would be terminated and re-connection fees would be assessed in the event water service was restored. *Id.* at ¶ 14. The bill also contained a basic service charge, which was not based on actual water usage. *Id.* at ¶¶ 15, 22(a). When the meter was actually read, it revealed that only a small amount of water had been used. *Id.* at ¶ 16. The water service was terminated and with it plaintiff lost the ability to use the sewage service. *Id.* at ¶ 16.

The bills received by plaintiff contained numerous charges for various events or services, such as generation of a work order for shut off, completing a shut-off, final meter reading, posting a shut-off notice and so forth. *Id.* at ¶ 18, 21-22; Ordinance 696 (Doc. No. 1-2). Plaintiff received a copy of the schedule of fees pertaining to the termination of services. *Id.* at ¶ 14.

Plaintiff inquired with borough staff about the fact that he did not receive notice in a timely manner but was told the fees were the result of a local ordinance and he would have to pay them. *Id.* at ¶ 21. Plaintiff wrote a letter to the borough asking for leeway to pay the charges over time based on "indigence," but the borough did not respond to plaintiff's inquiry. *Id.* at ¶¶ 29-30.

4

Plaintiff seeks declaratory and injunctive relief on the ground that Ordinance 696 and the defendant's enforcement of it violate his rights to due process. *Id.* at ¶¶ 34-39. It does so by failing to 1) allocate cost proportionally with the specific amount of water used; 2) provide for timely and adequate notice; and 3) draw distinctions based on the financial and economic abilities of the consumer. *Id.* at ¶¶ 34-39. It also violates the Fourteenth Amendment by imposing fees that are irrational and arbitrary. *Id.* at ¶ 17.

Plaintiff likewise claims that his rights under the First Amendment have been violated. *Id.* at ¶¶ 60-78. Plaintiff notified the Ford City Borough Council of his challenge to Ordinance 696 directly after receiving the posted notice that his water service was being terminated. *Id.* at ¶ 60. He first informed the council of his challenge in person and again in writing on April 16, 2015, by providing a draft copy of his complaint. *Id.* at ¶ 60. He asked the borough to forgo termination of service and to give him additional time to pay the assessed fees. *Id.* at ¶ 60. He also made council aware of two acts of negligence by the borough that were occurring which would result in the borough's residents having to pay claims in excess of $500,000.00. *Id.* at ¶¶ 67-69.[2] His requests were acknowledged and thereafter denied in a formal letter dated May 9, 2015. *Id.* at ¶ 61. His water service was disconnected on May 19, 2015. *Id.* at ¶ 61.

Plaintiff having advised the council that 1) the Ordinance was illegal and 2) the borough was engaging in malfeasance purportedly were acts of protected speech, and council's informed decision to permit termination to occur thereafter assertedly was an act of retaliation. *Id.* at ¶¶ 64-65, 67-69. The act of retaliation, i.e., the loss of water service, resulted in the loss of quiet enjoyment of the residence. *Id.* at ¶ 76. It likewise has resulted in plaintiff's inability to live and

---

[2] These events underlie plaintiff's lawsuit filed at *Marin v. U.S. Economic Development Admin., et al.*, 2:15cv792.

5

work in Ford City. *Id.* at ¶ 76. All of these actions have violated plaintiff's rights as secured by the First and Fourteenth Amendments.

Finally, plaintiff seeks declaratory relief enjoining the borough from enforcing an ordinance that prohibits a real estate owner from letting the grass grow over one-foot high. *Id.* at ¶ 43. Plaintiff was informed of the ordinance by borough police. *Id.* at ¶ 43. The ordinance can be enforced by posting notice on the property and does not require notification by mail. *Id.* at ¶ 43. Failure to comply may lead to an arrest. *Id.* at ¶ 43.

Plaintiff does not know if his property has been cited for violation of un-kept property. *Id.* at ¶ 45. After termination of his water service, plaintiff left his house and does not have the funds to travel back and forth to cut the grass. *Id.* at ¶ 42. But the mere threat that he will be cited, receive notice only by posting and be subject to arrest for failure to comply is an unlawful form of extortion. *Id.* at ¶ 47. It likewise is based on Pennsylvania law that has been repealed and not replaced. *Id.* at ¶¶ 48-49. Because the borough does not follow the current procedure, enforcement of the ordinance purportedly violates the Fourth and the Fourteenth Amendments. *Id.* at ¶¶ 52-56. Accordingly, plaintiff asserts he is entitled to a declaration finding the rule to constitute extortion by threat of arrest and unlawful imprisonment and an injunction barring the borough from enforcing it. *Id.* at ¶ 57.

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983. A § 1983 claim provides a vehicle for vindicating a violation of federal rights. Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under §1983 has two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by the constitution or laws of the United States (2) that was committed by a person acting under color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of Sayreville, 107 F.3d 1073, 1077 (3d Cir.

6

1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.") (citing Groman, 47 F.3d at 633)).

In order to establish that a defendant violated a constitutional right, "the exact contours of the underlying right said to have been violated" must be determined. Berg, 219 F.3d at 268 (citing City of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)). While plaintiff generally asserts that he was denied his rights to due process and equal protection and subjected to retaliation with regard to the fees for termination of water service in conjunction with the family trust's ownership of real property in Ford City, when the complaint is stripped of its hyperbole and generalized conclusions it fails to set forth little factual detail from which to determine whether plaintiff's rights plausibly have been violated. Nevertheless, the court will afford plaintiff the most favorable reading possible in light of his *pro se* status and proceed with the issues raised.

Plaintiff's interweaving of Fourteenth Amendment due process and First Amendment retaliation claims in his complaint is unavailing. These claims are founded on two areas of §1983 jurisprudence. First, plaintiff must be able to satisfy the substantive or procedural due process component of his claim that the forms of notice employed and fees charged by the borough in conjunction with providing municipal water service violate the Fourteenth Amendment.

"The touchstone of due process is the protection of the individual against arbitrary action of government." Miller v. City of Philadelphia, 174 F.3d 368, 374 (3d Cir. 1999) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974)). Where a member of the executive branch is alleged to have engaged in abusive action, "only the most egregious official conduct can be said to be

arbitrary in the constitutional sense." Id. at 375 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)). To generate liability the conduct "must be so ill-conceived or malicious that it 'shocks the conscience.'" Id.

The "shocks the conscience" standard is not self-executing. Lewis, 523 U.S. at 845. It nevertheless serves as "the beginning point in asking whether or not the objective character of [the conduct in question] is consistent with our traditions, precedents, and historical understanding of the Constitution and its meaning." Id. at 857 (citing Lewis, 523 U.S. at 1722 (Kennedy, J., concurring)).

Beyond plaintiff's bald and unsubstantiated conclusions, the complaint does not contain any facts to support plaintiff's contention that the fees were part of a diabolical scheme to hoodwink taxpayers and artificially increase their taxes. And even assuming the fees were grossly disproportionate to actual water consumption and/or the human recourses needed to complete the service tasks at hand, such executive action simple cannot arise to the level of malfeasance or intentional conduct that shocks the judicial conscience.

Second, plaintiff's reliance on the procedural component of the Due Process Clause of the Fourteenth Amendment likewise is wide of the mark. Where a state provides a system of notice and opportunity to challenge the deprivation of property, it affords the process that is required by the Fourteenth Amendment. The record sufficiently indicates that plaintiff has been afforded due process.

"[A] state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by [an entity charged with fulfilling a constitutional or congressionally imposed mandate]." DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir.1995), overruled on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of

8

Warrington, 316 F.3d 392 (3d Cir.2003). In other words, when a state "affords a full judicial mechanism with which to challenge the [] decision" in question, the state provides adequate procedural due process, whether or not the plaintiff avails him or herself of the provided appeal mechanism. Id. (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 682 (3d Cir.1991)).

Here, plaintiff admits that the borough did attempt to provide him notice both by mail and posting. Plaintiff admittedly provided one address and then changed to another, and complains that the notice was sent to the first address provided and not the more recent one given. Plaintiff is no stranger to complaining about confusion created by these types of arrangements and always seeks to lay fault for delay at a governmental entity's doorstep. *See* footnote 1, *supra*. Whatever else should be noted about the events in question, it cannot be said that the allegations set forth a plausible showing that the defendant has adopted a system of notification that is not reasonably calculated to provide actual notice and/or has implemented a system designed to prevent an aggrieved party from seeking administrative and/or judicial redress.

Moreover, plaintiff clearly could have received advanced notice of the termination fees before deciding to sign up for the service. He likewise could have availed himself of a number of avenues to challenge any colorable grievance that arose. The record does not imply that he pursued any of these. Consequently, a procedural due process claim has not plausibly been set forth.

Plaintiff's attempt to seek shelter in the First Amendment fairs no better. In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected

conduct and the retaliatory action.  Id. at 793 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Latessa v. New Jersey Racing Comm'n, 113 F.3d 1313, 1319 (3d Cir.1997)).

Plaintiff cannot plead facts that plausibly show the second element of a First Amendment retaliation claim can be satisfied.  No facts are alleged that make it plausible that either the notice of termination and/or the fees assessed in conjunction therewith or for restoration of service were predicated on an improper purpose.  Saying it is so in a conclusive fashion does not supply the facts necessary to make such a claim plausible.  Furthermore, plaintiff has not been barred from pursuing relief ordinarily available to those who have grievances with public utility service providers.  The complaint is devoid of facts which identify an improper impediment to such a review.

Plaintiff likewise has not set forth facts that plausibly show he has been impeded in an improper manner from seeking review of the billing statements and/or restoration of service.  Plaintiff merely quarrels with those who have insisted that he comply with the predetermined costs and responsibilities of availing oneself of such services.  Even assuming the shortcomings identified by plaintiff, his difficulties are not of a constitutional dimension.   In short, the allegations of the complaint make clear that plaintiff cannot allege the presence of a form of retaliatory action sufficient to deter a person of ordinary fitness from seeking relief from a notice of termination and/or obtaining restoration of municipal water service.  Consequently, plaintiff's attempt to invoke the First Amendment is without merit.

Plaintiff's claims based on his concern that he might get cited for failing to keep the property properly maintained are not ripe for adjudication.  The doctrine of ripeness prevents courts from "entangling themselves in abstract disagreements."  Presbytery of New Jersey of

10

Orthodox Presbyterian Church v. Florio, 40 F.3d 1454, 1462 (3d Cir. 1994) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967)). "[R]uling on federal constitutional matters in advance of the necessity of deciding them [is to be avoided]." Id. (quoting Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 413 (3d Cir.1992)). Consideration must be given to "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 1462-63 (quoting Abbott Labs., 387 U.S. at 149). In order to satisfy these requirements a case must present "'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Id. at 1463 (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971) (quotation omitted). "A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action . . . .'" Id. (citing Warth v. Seldin, 422 U.S. 490, 499 (1975).

Plaintiff's challenges to the potential enforcement of the lawn ordinance are not ripe. Plaintiff admits that the property in trust and upon which he basis this lawsuit has never been cited by defendant's code enforcement officers. His predictions about what might happen are based on pure speculation and conjecture. In other words, they are a purely hypothetical state of affairs. Such predictions do not suffice to establish an injury in fact giving rise to an ability to fashion concrete and meaningful relief. Consequently, plaintiff's attempts to ease his apprehensions about being an absentee real estate owner do not satisfy the requirements for initiating a lawsuit.

For the reasons set forth above, the Clerk will be directed to file plaintiff's complaint, plaintiff's claims will be dismissed for failure to state a claim and a final judgment order will be

11

entered. An appropriate order will follow.

Date: September 27, 2018

s/David Stewart Cercone<br>David Stewart Cercone<br>Senior United States District Judge

cc: Mel M. Marin
    3900 Dawnshire Dr.
    Parma, OH 44134

    (*Via CM/ECF Electronic Mail*)